The next argument is docket number 24-1414, Motorola Mobility LLC v. Largan Precision Co. Okay, Mr. Vandenberg, whenever you're ready. May it please the court. The board's refusal to consider our ZMAX modeling evidence was an abuse of discretion. They did not say that the evidence was irrelevant to motivation, and they didn't say they would have ruled the same way had they considered the evidence. They said that our reply's reliance on the ZMAX evidence to show motivation was not responsive to Largan's arguments. Well, that's baffling, because Largan had cited the exact same evidence on the exact same issue of motivation in its patent owner response. Now in our petition, we cited this ZMAX modeling evidence of our expert, Mr. Aikens, in two sections, each of which were headed with an argument that there was a motivation to combine. So the petition tied this evidence to motivation, and then in response, Largan, and this is which I'll quote, a posita would not have been motivated to combine Chung with Sakeen. And inside that section heading, it's specifically Appendix 2732 to 37, Largan had six pages of arguments about the ZMAX evidence. So again, in their patent owner response, they had six pages of arguments about this exact same evidence that the board later refused to consider under a section heading of motivation. And then I would invite the court's attention to the third volume of the appendix, and page Appendix 6294. This is our reply. So petition, we cited ZMAX modeling under motivation headings. Response, they had six pages talking about the same evidence under motivation heading. And here in our reply at 6294, we have this section G at the bottom where we're talking about Mr. Aikens' ZMAX evidence. The second line under there refers to POR 33 to 37. Those are five of the six pages of Largan's arguments about ZMAX under a motivation heading. And at the bottom page, we tie it to motivation. At the bottom of the page, we say a posita would have been motivated to apply these teachings. So I guess what I'm trying to figure out about this ZMAX modeling is it feels like the way it's used and presented here is it's really to confirm obviousness. And it's not really a basis for explaining why a skilled artisan in the first place would have chosen to make these particular choices to adapt Chung to take on this Sakeen ratio. We would submit it's really both, and that goes to whether the error in refusing to consider this evidence was harmless or not. And we have three reasons for why this evidence was critical to motivation and needed to be  First, this evidence refutes the board's central finding that we, Motorola, had failed to show that these teachings apply to Chung embodiments in 11 and 12, despite the admitted differences between those embodiments in Chung and the embodiments in Sakeen. That was the big argument by Largan that, oh, there's differences between these embodiments, and therefore the teaching, the R1 over F teaching, does not apply to Chung. So whether it's even combinable at all. Yes. And this evidence, and in this field, when we say we're combining teachings, the reality is you're combining them in the software. The skilled artisan is using the software, they program in Chung 11 and 12, and then they do their optimizations with the Sakeen teaching on the wall in front of them. Let's make sure this ratio is roughly minus three. Let's slowly, step by step, increase the field of view to 115 degrees. And as we do it, let's look at this teaching from Sakeen in order to limit the hit on track length, et cetera. So the first reason it's relevant is it refutes the central finding that you can't combine these puzzle pieces. It shows that you can combine these puzzle pieces, as Posida can, and the second argument is that it not only showed that you can combine the puzzle pieces, it showed you could combine them easily. Okay, this is all, we're all in can land, as you know, can or could, and now the real question is why would a skilled artisan have done this in the first place? Why would a skilled artisan have, looking at all the prior art out there, plucked this one aspect of Sakeen and said, I want to use that to make interesting adjustments to Chung to improve the performance of Chung's field of view or image quality or whatever the case may be. Right. So I just don't know how the ZMAX evidence pushes forward on that story of why would a skilled artisan at the relevant time period use this aspect of Sakeen. Well, the reasons, the motivation Mr. Aikens explained, Mr. Aikens explained the motivation. He did the ZMAX modeling evidence and it confirmed that his opinions were correct. So this was objective scientific evidence confirming the opinion of the expert that the Posida would have combined these teachings.  I thought you said that it confirmed that a skilled artisan could combine Sakeen with Chung, and that's a very different question than the would. Well, it does both, we submit, because again, when the combining would have been done with the software. So essentially, the Posida had a reason to combine these, a reason to start programming it into the system, and that reason included the fact that these systems had a lot in common, that Chung 11 and 12 and Sakeen had a lot in common, and that the Sakeen teaching went directly to the issue that Chung identified as a problem, namely, when you increase field of view, you have to sacrifice these other considerations. The R1 over F teaching went primarily to that, Aikens explained that, but then in order to actually combine the teachings until you had an actual working product, it can take 100 hours. I believe that's in the Aikens deposition testimony. He spent 10 hours on one embodiment to show that as the Posida started down that path, they would be motivated to continue. So I analogize it to a trail that's supposedly going to the summit of a mountain. You're motivated by the original sign, the original teaching saying this is a summit to the mountain, but you're continuing to be motivated to continue down that path. If the footing is good, it seems to be rising in elevation, et cetera. So the court has recognized that reasonable expectation of success and motivation to combine are logically associated. We submit here, they are extremely intertwined. They're extremely logically associated because of the nature in which skilled artisans combine the teachings. So your argument is that even though Sakeen may be sort of relevant, clearly relevant to the expectation of success, there's also relevance to the motivation to combine and the board failed to appreciate that. Precisely. We'd also, on the relevance, submit that Largan has effectively conceded the point. In their red brief, Largan argued, and this was red brief page 57, they argued incorrectly, we submit, but they argued, quote, Mr. Aiken's ZMAX results tended to disprove motivation. Obviously we disagree, but that's an acknowledgment that it is probative on the issue of motivation. And we agree that looking at this, one could think, well, we sort of have the cart before the horse, how could proving that it works motivate you in the first place? So we understand that. But the board, again, did not find this evidence was irrelevant to motivation. The board did not find that this evidence was unreliable. The board didn't even sort of acknowledge that this evidence was used by our expert to confirm the expert's views, nor did the board acknowledge, well, the board did acknowledge that Positas used these tools. That was part of the definition of a Posita. The board accepted that. So again, you have these skilled artisans. They use these tools whenever they want to combine something. It was undisputed, in effect, that there was a motivation to increase the field of view in order to take selfies, et cetera. So that part was undisputed. And then I believe it was undisputed that when you increase field of view, there's a tendency to sacrifice image quality and increase the track length. The R1 over F teaching, I believe, was undisputed, speaks to that issue in Sakine. And our expert said the Posita would understand. And the fact that it worked, we submit, more in response to your questions, Your Honor, Judge Chen, the fact that it worked, we submit, is probative on whether a skilled artisan would know it would work and be motivated and would see benefit. The fact that they're skilled, and here our Posita has three years of experience using tools like this, three years of experience of taking a design, often beginning in a patent, and optimizing that for whatever purpose they want to improve on it. If you have three years of experience and you see this teaching, and the reality, objective scientific evidence is you can fit these pieces together, we say that's probative that this Posita would know that. Your interview rebuttal, but I did want to ask you about what I thought was the main thesis of the board's opinion, which is, it seemed unlikely, and it seemed like hindsight for a skilled artisan to consult Sakine and pluck this one aspect of Sakine out and plug it into Chung, because Chung outperforms Sakine in just about every relevant way. It has better field of view, it has better image quality, it has better track length, it has better F number factor. So the board said it seemed unlikely that a skilled artisan would consult this overall inferior product to try to improve a superior product. And part of the response to that is that a star athlete can still learn from a coach whose skills are less, and this particular teaching was uniquely suited for Chung 11 and 12. It was the only teaching in Sakine, as the record shows, that was directed to lens systems with the concave negative radius first lens on the object side. And that's what Sakine R1 over F teaching is about. And then Sakine's own, I believe, paragraph 50, if I'm not mistaken, says essentially that its teachings are a la carte teachings, that you don't have to do everything in Sakine. Sakine may have been happy with a lower field of view. Sakine, the person, may have been happy with their results. We don't know what Sakine was striving for. And therefore the fact that Sakine's embodiments are not as effective does not mean that it's teaching was not applicable. And again, their main finding was that we didn't show that this teaching applied to Chung 11 and 12 because of the differences in the embodiments, including what Your Honor just recognized. And that's what the ZMAX modeling evidence refuted. And therefore it was a harmful error, and we'd ask the court to remand and to correct the other errors that we've briefed. Okay. Thank you. We'll save your remaining time. Thank you. It please the court, Kevin Russell on behalf of Apelli Largan Precision Company Limited. Let me start with the ZMAX evidence. There are two reasons why the refusal to consider that evidence is not reversible error. The first is that the board did not abuse its discretion in finding that Motorola raised that argument too late, and I'm happy to walk through the briefing to discuss that. But I think there is a much easier path forward for the court, which is the questions Judge Chen was asking, which is that Motorola did not show that that exclusion was prejudicial. Because the most the ZMAX evidence can show is what a person of skill and of art in the art would have learned if they had attempted the combination. They say they would have learned that it worked, that it was easy, that it was beneficial. But the motivation question asks whether they would have attempted that combination in the first place, and that turns on what they knew at the time of the invention. And they did not know at the time of the invention what Mr. Akins would discover in his 2022 experiment seven years later. And in fact, it's no different than pointing to, for example, a journal article from 2022, pointing out and touting the benefits of the combination. That kind of evidence is categorically incompetent to prove motivation because it is not providing information about what a person of skill in the art would have known at the time. And the question under KSR is whether the person would have recognized the benefit. My understanding is Mr. Vandenberg is suggesting that maybe there's an inference there, nevertheless, that the successful modeling testing shows that because it can be done and it can be done relatively easily, in his view, there's an inference there that a skilled artisan would be able to recognize that pretty instantly back at the relevant time period. I don't think that is a permissible inference because you could say the same thing about the patent itself. The patent shows that the R1F ratio applies to and benefits a system like Chung. But I don't think anybody would say that you could cite to the patent itself as showing motivation at the time of the invention. So are you saying a person of ordinary skill would not have had a reason to even sort of plug in the factors to Zemax to see if this worked or not? No, I mean, they've got to point to something that shows that they would do that. So without that motivation, even if after the fact it sort of confirms that it would have worked, that doesn't bear on the threshold question. I think that's right because there are lots of teachings out there that you could run through a Zemax system. But a person of skill in the art isn't going to do that to decide whether or not to be motivated to do it. And Motorola acknowledges that what running that through the Zemax system is, is combining it. That's what you do to combine the arts. With respect to the motivation question, obviously there was a very strong argument in the petition about, you know, the teaching in second A that could be used to alter and adjust the last limitation in the claims in question or the last limitation missing from Chung. And I didn't see anything in the board's opinion that directly addressed that other than a sentence or two almost in passing. There was just a lot of discussion about, well, Chung and second A are really different. They work differently. There are different curvatures of different lenses. And if you adjust this, you adjust that. But there wasn't any sort of spot on focus on the exact argument that was raised in the petition. I'm sorry. Can I ask you to clarify what the exact argument you're talking about is? The argument that the second A teaching could be used in combination with Chung to meet the limitation. I think that is the very first. So the court held that there was no motivation, right? It didn't address reasonable expectation of success. And so the question was, would a person of skill in the art think, number one, that Sukhine's teaching would apply even to Chung? So where in the board's decision do they hit that point at all? That is the very first part of their analysis, which is at, starts at appendix 33 and goes over to 34. Give me a second to get there. Okay. Go ahead. And it starts on 33, the first full paragraph. Although Petitioner points to similarities between Chung and Sukhine, there's also significant differences. And what they take away from that is on the next page, the top of the page. It says, Petitioner does not sufficiently address in this proceeding that Chung embodiment 11 and 12 have negative, this difference. And then it says, these differences in these systems' performances would have led Pazita to doubt or at least question whether Sukhine's teachings would have been useful in Chung, even considering the alleged similarities. And so the board was pointing out that. But there again, and I don't mean to interrupt, but there again, if you know that statement, the difference in these systems' performance would have led Pazita to doubt or at least question that Seconi's teachings would have been useful in Chung, even considering their alleged similarities. It's sort of a very general overview statement rather than a direct reference to the R1 over F question. And that's what I was looking for. Let me try answering that in another way. If somebody picks up Sukhine and looks, it's got a bunch of teachings in it. One of them is this R1 over F ratio. And they're going to wonder, would that be usefully applied to Chung? Now, Sukhine doesn't say that this is a universal teaching that applies to every system. And so the person has to ask themselves, what would lead me to think that if I were to go through all this work to try to combine them, that it would even work, that it would even apply? And what the board said, it is Motorola's obligation to show that there is something that would lead them to think that it might work. And all Motorola showed were some surface similarities between the systems. And what the court here is saying is you can't just point to those similarities and ignore the differences, which is what Motorola did. I guess since you're arguing that there's a threshold set to even go to the reference, and the board found you wouldn't even get past that threshold set because nobody would look to that as a teaching that's relevant, then there's sort of no motivation to combine. That's right. The board made... I'm sorry. The board made two... And we don't have to agree with that, right? We don't have to agree that that's the correct finding on motivation to combine. We just have to find that it doesn't lack substantial evidence. That's right, and that it isn't based on any legal error. Now, Motorola says that it's based on legal error because they should have considered the Zemax evidence. But setting that aside, it sounds like they addressed it to some extent anyway. Yes. And if it lacks substantial evidence, that means no reasonable person could come up with that conclusion. That's right. And I think that the board is eminently reasonable in thinking that the surface similarities that they pointed to would not lead somebody to think that this is going to apply to Chung, given the differences in the system. I guess aside from Judge Hughes's question, which brings out this threshold question about whether Skilled Artisan would look at Sakain in the first place, is there something in the board's decision, board's analysis, that takes on specifically what I understood the petition to be saying, which is, yes, Skilled Artisan would take this one teaching from Sakain about the ratio because you could improve and further widen your field of view while still preserving and maintaining image quality. So the board had a second set of findings. Number one, it said Motorola didn't prove that somebody would think it would apply in the first place. And then they had a set of findings that nobody would think that it would improve the balance in any respect because Motorola at page 20 of its reply brief disavows that anybody would use Sakain to increase the field of view. Instead they say it will simply mitigate the damage to track length and image quality while using other teachings to increase field of view. But you can set aside track length because the board found, and they don't challenge for lack of substantial evidence, that Sakain teaches a limited solution to a track length problem that Chung doesn't have. And so then we're just left with image quality. And the board credited our expert's testimony that she, quote, saw no evidence that images from combined Chung and Sakain systems would have been equal to or higher quality than either system standing alone. And that's, I think, sufficient substantial evidence to support the board's conclusion that a person of skill in the art wouldn't think that combining Sakain with Chung would improve any aspect of the features that Motorola points to as allegedly providing the motivation to combine. I'm happy to discuss the other issues in the case, but if the board doesn't have any further questions. On the issue of whether the board truly considered motivation per Judge Lin's initial question, I'd invite the court's attention to the volume two of the appendix, the institution decision. This is appendix 2-5-6-4. And there the board recognized the motivation. 2-5-6-4. Said that the posita would use a lens design program to balance between competing objectives. The objective is to balance a short track length, a wide field of view, and improved image quality. And then patent owner does not explain why a posita would not accept sacrifices in some of the criteria in order to get a wider field of view. And then in the final written decision, they did a U-turn and didn't really go back to revisit that. So they accepted the overall motivation and did a U-turn. In terms of my friends basically suggest, if I understood correctly, that this evidence, the cart before the horse, the ZMAX evidence, cannot be probative of motivation. I'll again repeat that their red brief on page 57, our view, admitted that it was probative by saying that, oh, the ZMAX evidence shows no motivation. Well, if it can show no motivation under their incorrect theory, it can show motivation. And as far as the expert, the expert simply didn't come up with some new test years after the fact to show that it worked. The expert testified that this ZMAX software he used, the same capabilities existed and were available to and commonly used by the skilled artisans at the time. And that's appendix 700 where Mr. Aikens explained that this is what the posita would have done. The board did not consider the ZMAX evidence at all. The board's decision did not consider the ZMAX evidence in determining motivation. They simply didn't. They gave a few reasons that we submit were error. And then Sakeen, paragraph 50, was the correct paragraph where it says that its teachings were a la carte and that's appendix 927. And then finally, the last point, that there was no benefit. There was a great benefit. The benefit of the combination was that you had 115 degree field of view. Chung 11 and 12 did not have that. So there was a benefit. Sakeen wasn't there to tell you how to increase the field of view. It was there to tell you what to take care of and to adjust in order that that increased field of view doesn't mess up everything else. So we submit that the board erred as a matter of law by not considering this probative evidence and that tainted everything along with the other errors that we've noted.